## MELANCON'S HEIRS *vs.* ROBECHAUD'S HEIRS.

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, FOR THE PARISH OF ST. MARTIN, THE JUDGE OF THE SEVENTH PRESIDING.

On remanding a cause for trial, between the warrantors, the plaintiff, in the demand in warranty, may amend his answer so as to claim damages from his warrantor. The amended answer does not change the substance of his demand, or legal the recourse against his warrantors.

Under the old *Civil Code*, the party evicted will not be allowed, as damages, a proportion of the price of sale, equal to the quantity of land from which he has been evicted: But in assessing damages, when the sale is not cancelled, he is only to be re-imbursed the *value of the evicted part, according to its estimate at the time of the eviction.*

When the court is unable, from the evidence, to assess the value of the evicted premises, it will remand the case for this purpose.

This case involves a series of litigated contests, remarkable in the history of our jurisprudence, beginning in the year 1819, coming down to the present time, and still pending. This legal controversy has been prolonged from peculiar circumstances, until nearly all the original parties have

WESTERN DIST. died off, and the second and third generations are destined to
September, 1840. battle the glorious uncertainty of the law, to a sad conclusion,
and reap the bitter fruits of an unprofitable controversy, when

MELANCON'S
HEIRS
*vs.*
ROBECHARD'S
HEIRS.

there is nothing left but a couple of arpents front, of poor land,
on the borders of the bayou Teche, to be received as the prize
of the victorious party, which remains a blighted and barren
monument of the unprofitableness of a protracted law suit.
The eminent counsel who were employed to conduct this
extraordinary case, in the outset of their professions, have
labored and battled at the bar, until they have grown rich
and become weary of legal strife, and one of them has retired,
on his ample fortune, to enjoy the comforts and blessings of
a quiet life, while the other is elevated to the distinguished
station where law, justice and equity meet together, and are
dispensed with a view to end the bitter strifes and unprofita-
ble legal controversies of men.

At the probate sale of the succession of Charles Melançon,
deceased, in the Parish of St. Martin, in 1819, Dr. Jean
Duhamel, became the purchaser of a tract of five arpents
front of land on the bayou Teche, for the price and sum of
six thousand one hundred and fifty dollars, payable by instal-
ments.   When the first instalment became due, and suit
instituted to recover it, in 1820, Duhamel, finding he had
made a bad bargain, resisted payment, on the ground that all
the formalities of law, in selling minor's property, had not
been complied with, but was unsuccessful.   See 10 *Martin*,
225.

This suit again appeared, because the judgment did not ex-
press the sum for which it was given, but this court said the
"judgment was valid, although the *sum* is not stated therein,
when it appears in the record."   3 *Martin, N. S.,* 7.   The
case now assumed a new form, in the person of *Pierre Brous-
sard* vs. *Jean Duhamel,* to evict the latter of the largest portion
of the five arpents of land, when the court decided, " that a
witness having an interest in the question to be determined,
and none in the event of the suit, the objection goes to his
credibility and not to his competency ;" and " that purcha-
sers under the same title, without partition, cannot prescribe

WESTERN DIST.
September, 1840.

MELANCON'S
HEIRS
vs.
ROBECHAUD'S
HEIRS.

against each other, by the lapse of ten years." From the concealment of a book of surveys, the plaintiff, Broussard, succeeded in evicting Duhamel of three arpents of this land, and the latter brought in the Melançons on their warranty. They attacked Broussard's judgment in an action of nullity, but it was decided no action of nullity would lie against a judgment of the Supreme Court, although instituted in the court where the judgment was first rendered ; 2 *Louisiana Reports*, 8. Pierre Broussard renounced the benefit of his judgment of eviction against Duhamel, but too late to be of any service ; some other persons claimed the land under him, although Duhamel was not put out of possession. Melançon's heirs now instituted suit for the last instalment of the price due by Duhamel, the latter set up the judgment of eviction, and prayed a rescission of the sale, to which they offered the renunciation of Broussard, of all advantages and benefits under *that* judgment. The case was remanded from this court, without a decision on the merits. See the case, 4 *Louisiana Reports*, 362. By this time, Duhamel was dead, and his curator had leave to discontinue all claim for damages against his warrantors, (Melançon's heirs) for the eviction, preferring to have the sale rescinded and get clear of a hard bargain. See the case of *Broussard* vs. *Duhamel et al.* 4 *Louisiana Reports*, 366. On the return of the case to the District Court, there was a judgment rescinding the sale of this land, and Melançon's heirs appealed. The judgment was reversed, and a new judgment given against Duhamel's curator and surety in the original purchase, for the amount of the last instalment due of the price. See 7 *Louisiana Reports*, 286. A re-hearing was granted, and upon a re-argument, the decision reversing the judgment of the District Court, rescinding the sale, was taken back, and a new opinion given, rendering judgment affirming *that* of the District Court. See 11 *Louisiana Reports*, 317. Melançon's heirs, now turned upon the heirs of Frème Robechaud, the original vendor of Melançon, on their warranty for damages.

WESTERN DIST.
September, 1840.

MELANCON'S
HEIRS
vs.
ROBECHAUD'S
HEIRS.

Upon the issue thus made up, the district judge decided that the heirs of Robechaud, were bound to indemnify the heirs of Melançon for all the expenses, losses and damages resulting from the eviction. To ascertain the *quantum* of damages, the price for which the land was sold at the probate sale of Charles Melançon's estate, to wit, six thousand one hundred and fifty dollars was taken as the measure of the damages occasioned by the eviction. The court then decreed, that the defendants should pay three thousand seven hundred and ninety-six dollars, the proportion which the price of the evicted premises bears to the original sale, with legal interest from the time the instalments of said price became due until paid, one thousand dollars the amount of fees paid counsel, and two hundred and seventy-four dollars costs; in all the gross sum of five thousand and seventy-one dollars and sixty-seven cents, with interest; to be paid jointly by Robechaud's heirs. They appealed.

The case was argued by Mr. *Voorhies*, for the plaintiffs and appellees; and by T. H. *Lewis* and I. E. *Morse, Esqrs.*, for the defendants in warranty.

*Morphy, J.*, delivered the opinion of the court.

The history of this case is a long one, and may be read by the curious in several volumes of our Reports. See 10 *Martin*, 225. 3 *Martin, N. S.*, 7 and 11. 4 *Louisiana Reports*, 362 *and* 366. 7 *Idem.*, 286, *and* 11 *Idem.*, 317. Suffice it to state, for the purpose of the opinion, that Jean Duhamel, having been finally evicted of three arpents of a tract of five arpents of land, which he had purchased from the heirs of Charles Melançon, the cause was remanded for the assessment of his damages against his warrantors. The curator of the estate of Duhamel, who had died before any further proceedings were had in the case, prayed for and obtained leave to dismiss the suit in relation to the prayer for damages; and the judgment, allowing such dismissal, was affirmed by this tribunal, on an appeal brought up by the warrantors.

On the return of the case to the District Court, in 1833, the heirs of Melançon, obtained leave to amend the answer

by which they had cited in warranty their vendors, the heirs of Frème Robechaud. The case was then continued from term to term, until the fall term of 1838, when by leave of the court, again granted, the heirs of Melançon filed an amended answer, claiming damages of their vendors to the amount of twenty thousand dollars. Judgment having been rendered for a portion of the sum claimed, the warrantors appealed.

WESTERN DIST.
September, 1840.

MELANÇON'S
HEIRS
vs.
ROBECHAUD'S
HEIRS.

Our attention has been drawn to a bill of exceptions, to the opinion of the judge *a quo*, overruling a motion to annul and set aside the order, permitting the heirs of Melançon to file their amended answer for damages. We think the judge did not err. In suits of this kind, there are as many issues joined as there are successive warrantors called in, and it is customary and convenient, before trying them, to await the decision of the main issue in relation to the title. The heirs of Melançon have been very slow and remiss, it is true, in their proceedings, but their warrantors have been equally so, for they could have had the case set down at any time. The original issue, joined between them, was still pending and undecided. The dismissal of Duhamel's claim for damages could not affect or destroy that of the Melançon's against their own vendor, for the price paid or other damages suffered. Their amended answer did not change the substance of their demand or legal recourse against their warrantors; for under their original citation in warranty, they could have obtained, upon sufficient proof, every thing which the law authorizes a vendee, who is evicted, to recover of his vendor. 14 *Louisiana Reports*, 138; *Vascocu's Widow and Heirs* vs. *Pavie.* The amended answer then only sets forth in detail, the damages they expected to prove; of this, the warrantors cannot complain. But we differ with our learned brother as to the measure of damages to be allowed in a case like the present. The land had been sold by the heirs of Melançon, in 1819, for six thousand one hundred and seventy dollars. He has allowed them as damages a proportion of this price, equal to the quantity of land of which they have been evicted. We find in the old *Civil Code*, under which the sale to the Melan-

On remanding a cause for trial, between the warrantors, the plaintiff, in the demand in warranty, may amend his answer so as to claim damages from his warrantor. The amended answer does not change the substance of his demand, or legal the recourse against his warrantors.

Under the old *Civil Code*, the party evicted will not be allowed, as damages, a proportion

çon's was made, the rule we are bound to follow in assessing their damages. It provides, *article* 61, *page* 357, " if in case of eviction of a part of the thing, the sale is not cancelled, the value of the evicted part is to be re-imbursed to the buyer, *according to its estimate at the time of the eviction;* and not proportionally to the total price of the sale." The record contains no evidence of the value of the three arpents recovered by Broussard in 1824. One witness only speaks of the value of the land ; he appraises it at five hundred dollars the front arpent, at the time he was testifying, to wit, in 1840.

It has been pressed upon us, by the counsel for the heirs of Melançon, that the price they obtained from Duhamel for the land, in 1819, should be considered as its value, and as giving a correct measure for the damages they suffered in consequence of the eviction. This we cannot do, for, independant of the positive rule chalked out for us in the law itself, we do not believe that the land was ever worth that price. The estimate of its present value, by a witness well acquainted with the value of lands in this vicinity, shows that if at one time it was as valuable as pretended, it must have been ever since on the decline. The price obtained by the Melançon's has always been considered as very high ; and it is now almost a matter of juridical notoriety, that the collusive and fraudulent manœuvries between Broussard and Duhamel, had only for their object to rid the latter of a very bad bargain. Nay

it has more than once been admitted at the bar, that the land is at present of little or no value; what then were the three arpents of it worth in 1824 ? we cannot say. Under such circumstances, we have thought it best to remand the case for a new trial, that justice might be done between the parties.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be reversed, and that this cause be remanded, to be proceeded in according to law ; the appellees paying costs in this court.